Penny L. Koepke
pkoepke@hoalow.biz
**MAXWELL & MORGAN, P.C.**
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Classes*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Whittaker, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>Paul Moss Insurance Agency, LLC d/b/a Epiq Insurance Agency, an Ohio limited liability company,<br><br>*Defendant*. | Case No. 3:22-cv-08077-SMB<br><br>**PLAINTIFF'S MEMORANDUM REGARDING PRECERTIFICATION CLASS DISCOVERY** |

Plaintiff Brenda Whittaker ("Plaintiff") files this memorandum to address the issues raised by the Court in the November 21, 2022 discovery dispute hearing, including "whether precertification discovery should be allowed, and if it is allowed, what the appropriate time period would be" (dkt. 25). As set forth below, it is well-settled that courts should grant precertification discovery in cases filed as alleged Rule 23 class actions.

**A.      Denial of Precertification Discovery Would Be An Abuse Of Discretion.**

The Ninth Circuit has repeatedly advised that district courts should "afford the litigants an opportunity to present evidence as to whether a class action [i]s maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, *especially when the information is within the sole possession of the defendant.*" *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (citations omitted) (emphasis added); *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("Our cases stand for the unremarkable

proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted.").

Indeed, "[t]he propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses. To deny discovery in a case of that nature *would be an abuse of discretion*." *Doninger*, 564 F.2d at 1313 (emphasis added); *Kamm v. California City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975); *see also Perez v. Safelite Grp. Inc.*, 553 F. App'x 667, 669 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Mar. 7, 2014) (finding district court's failure to permit adequate precertification discovery regarding existence of a class was an abuse of discretion).

Precertification discovery is warranted here. Despite registering her number on the DNC Registry, Plaintiff received three calls in violation of the TCPA's regulations. Epiq asserts that Plaintiff consented to the calls by visiting a website with the URL "compare-auto-insurance-quotes.com," which is owned by Renuant, LLC ("Renuant"). Based on this supposed consent, Epiq contends it was not necessary to check Plaintiff's telephone number or any other phone number obtained from Renuant against the DNC Registry prior to placing calls.

Discovery is likely to reveal a class of consumers who were also listed on the DNC Registry whose phone numbers Epiq obtained from Renuant and who Epiq called repeatedly. Absent a production of the call records (which only Epiq possesses) or similar data, however, neither Plaintiff nor the Court can determine whether a class of consumers exists who were called more than once in any 12-month period.[1]

Likewise, Epiq should be ordered to produce its consent data. In Plaintiff's case, the data that Epiq claims is associated with her "lead" is rife with obvious falsehoods: the lead contains two separate cities, two separate zip codes, and was recorded as emanating from

---

[1] Plaintiff's counsel has been contacted by another individual who was registered on the DNC Registry and received calls from Epiq. Without discovery into Epiq's consent data, counsel cannot determine if he/she falls into the potential class of persons whose lead information came from Renuant.

Mexico City, Mexico.[2] Discovery regarding Epiq's lead system and calling system, which is likely highly automated, will reveal whether Epiq blindly accepted such leads or whether it conducted any type of review or investigation into the validity of the Renuant leads. Hence, the Renuant lead data is likely to reveal whether a certifiable class exists for persons who were called based on fraudulent leads. There is no basis for allowing Epiq to withhold such data prior to certification.

For these very reasons, courts routinely order TCPA defendants to produce their calling records and consent records prior to class certification.[3] As one court aptly put it, "it would be fundamentally unfair to allow Defendant to defeat class certification based on its representations about the contents of its call logs and the consent of its members while refusing to turn over those documents." *Bustillos v. W. Covina Corp. Fitness, Inc.*, No. 2:21-CV-04433-SB-AFM, 2021 WL 6618830, at *1 (C.D. Cal. Dec. 7, 2021).

**B.    Scope of Class Discovery**

The Court "has discretion in controlling the scope of pre-certification discovery to balance [class plaintiffs'] need for discovery to substantiate their class allegations and concerns regarding overly burdensome discovery requests directed on [defendants]".

---

[2] Virtually all of the information contained in the lead data (except for the Plaintiff's name and phone number) was false, including the street address, email address, marital status, and information relating to three vehicles that Plaintiff does not own.

[3] *See Mbazomo v. ETourandTravel, Inc.*, No. 2:16-cv-02229-SB, 2017 WL 2346981, at *5, 7 (E.D. Cal. May 30, 2017) (ordering production of records and explaining, "the Court agrees with the weight of authority on this matter that call logs and dialing lists are "relevant to [the] commonality" prong of the class certification inquiry."); *Doherty v. Comenity Cap. Bank &amp; Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable." (collecting cases)); *Bernstein v. S. California Tel. Co.*, No. 5:19-cv-01888-JGB-SP, 2020 WL 5289930, at *3-4 (C.D. Cal. May 27, 2020) (compelling the production of call logs and consent data); *O'Shea v. Am. Solar Sol., Inc.*, No. 14CV894-L (RBB), 2016 WL 701215, at *4 (S.D. Cal. Feb. 18, 2016) (ordering the production of documents relating to the procurement of consent and the defendant's outbound dialing lists); *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2022 WL 4535245, at *13 (D. Ariz. Sept. 28, 2022); *Webb v. Healthcare Revenue Recovery Grp. LLC*, No. C. 13-00737 RS, 2014 WL 325132, at *2–3 (N.D. Cal. Jan. 29, 2014); *Mora v. Zeta Interactive Corp.*, No. 116CV00198DADSAB, 2017 WL 1187710, at *4–5 (E.D. Cal. Feb. 10, 2017).

1    *Francisco v. Emeritus Corp.*, No. CV 17-2871 BRO (SSX), 2017 WL 11036693, at *4

2    (C.D. Cal. Sept. 5, 2017). Nevertheless, even when limited, discovery should still remain

3    broad enough to "identify class members for purposes of establishing numerosity" and to

4    demonstrate that the claims and defenses "are typical of the class". *In re Outlaw Lab'ys,*

5    *LP Litig.*, No. 18CV840 GPC (BGS), 2020 WL 1083403, at *7 (S.D. Cal. Mar. 5, 2020).

6          The discovery period should be limited from August 22, 2019[4] to the present. The

7    requests are already limited in scope and exclude all other sources of lead data, including

8    leads submitted through Epiq's own website and from other vendors.[5] This request is not

9    burdensome, and the Court should not simply assume that Epiq would be unduly burdened

10   without substantiation. *See Herndon v. Logan's Roadhouse, Inc.*, No. CV 11-1906-PHX-

11   PGR, 2012 WL 3042982, at *2 (D. Ariz. July 25, 2012) ("The party claiming that a

12   discovery request is unduly burdensome must allege specific facts which indicate the

13   nature and extent of the burden, usually by affidavit or other reliable evidence.").

14         To the extent that the Court is inclined to limit the time frame, it should refuse to

15   limit the class period to 1-day, as suggested by Epiq's counsel at the hearing. That frankly

16   strains credulity. Instead, any order limiting discovery should compel the production of a

17   sufficient sampling of data, which can be used to ascertain whether a certifiable class of

18   consumers exists. At the very least the Plaintiff should receive a one-year period of data

19   for the call records and the consent data in question. *See Santos v. United Parcel Serv. Inc.*

20   *(Ohio)*, No. 18CV03177EMCAGT, 2020 WL 13200157, at *2 (N.D. Cal. Mar. 27, 2020)

21   (finding that a "sampling of records" would be sufficient for precertification discovery);

22   *Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 589 (E.D. Cal. 2015) (ordering the

23   production of a sampling of discovery representing 25% of the class, and leaving open the

24   door for plaintiff to request broader discovery if they "uncover evidence of company-wide

25   violations").

26

27   ─────────────────
     [4] Epiq entered into an agreement to purchase leads from Renuant on this date.

28   [5] Epiq produced a template agreement with Renuant, which suggests that it contracts with
     numerous other third parties to purchase leads.

| | |
|---|---|
| 1 | |
| 2 | Dated: December 6, 2022 |

Dated: December 6, 2022

**BRENDA WHITTAKER**, individually and on behalf of all others similarly situated,

By: /s/ Taylor T. Smith
One of Plaintiff's Attorneys

Penny L. Koepke
pkoepke@hoalow.biz
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

*pro hac vice

Counsel for Plaintiff and the Putative Classes

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on December 6, 2022.

/s/ Taylor T. Smith